Lehman v. Bagley.

---

## Martin Lehman v. Frederick P. Bagley.

1. MASTER AND SERVANT—*Presumption that the Servant Knows the Condition of Appliances.*—The legal presumption is that a servant knows the condition of materials, machinery or appliances which he has constant opportunity to inspect, and which his regular duties bring under his notice.

2. SAME—*Duty of Servant to Use Precautions to Avoid Danger.*—
If a servant has knowledge of precautions, by using which danger may
be avoided, he should use such precautions.

**Action for Personal Injuries.**—Trial in the Circuit Court of Cook
County; the Hon. ELBRIDGE HANECY, Judge, presiding. Verdict and
judgment for defendant by direction of the court; error by plaintiff.
Heard in this court at the October term, 1898. Affirmed. Opinion
filed February 23, 1899. Rehearing denied April 13, 1899.

**Statement of the Case.**—This is error to reverse a judg-
ment for defendant in error in an action by plaintiff in error
for a personal injury, alleged by plaintiff to have been
occasioned by the defendant's negligence. At the close of the
plaintiff's evidence, the court instructed the jury to find the
issues for the defendant. The facts are substantially as
follows: The plaintiff had been in the employ of defend-
ant for eighteen months, at the time of the accident herein-
after mentioned. His duties were unloading sand from cars,
trucking stone from one car or place to another car or
place, and working at a derrick which was used to hoist
stone when necessary. He worked at the derrick many
times before the accident. The derrick was what is called
a boom derrick, having a perpendicular beam or mast
twenty-six feet high and thirteen and one-half inches square,
and a boom or movable piece of timber, extending trans-
versely from the mast and at an angle with it, twenty-eight
feet long, other dimensions twelve inches by thirteen inches.
The shaft by which bodies were raised or lowered was
operated by hand, by means of handles which fitted on to
the ends of the shaft. These ends were iron, square, and
about one and three-fourth inches in length. There was a
drum on the shaft, round which the cable ran and to which
it was fastened. The square iron ends of the shaft, on to
which the handles were placed (and which the witnesses
call keys, for what reason is not apparent), were worn
toward the outer ends, as the witnesses testified, about one-
eighth of an inch, so that when the handles were on, there
was a "play" between the handles and the ends of the shaft
of about one-fourth inch. When the handles or cranks were

on, the ends of the shaft protruded through them one-half inch.   There were wheels and cogs connected with the running machinery or appliances of the derrick, not necessary to be noticed in detail.   Previous to the time of the accident, the invariable custom, well known to the plaintiff, was to use the handles or cranks in hoisting stones and not in lowering them.   The custom in lowering them was to take the handles off and use a rope wound around the shaft, and the uncontradicted evidence is, that prior to the time of the accident stones had always been so lowered, and never by the use of the cranks or handles.   The accident occurred about two o'clock P. M., June 6, 1896 under the following circumstances: A large stone, about three and one-half feet in thickness, five and one half feet in width, eleven or twelve feet long, and estimated to weigh about eighteen tons, was brought to defendant's yard on a car.   A chain was put around the stone, to which a hook connected with the cable was attached, and an order was given by Tom Kerrigan, one of the men on the car, to hoist up.   Plaintiff was at the handle at one end of the shaft, and Steve Ramski and Pat Kerrigan, fellow-servants of the plaintiff, and who did like work with him, at the handle at the other end of the shaft.   The weight on each handle in hoisting was sixty-five pounds.   When they hoisted the stone high enough from the car, about one and one-half inches, to swing it off, they moved it around by means of the boom over the place where it should be let down, when an order was given by Tom Kerrigan, "Lower down."   They then started to lower it down by means of the handles, when, after a number of revolutions of the shaft, the handle which Ramski and Pat Kerrigan were operating, came off the end of the shaft, throwing the entire weight, 130 pounds, on the handle operated by the plaintiff, when the shaft commenced revolving rapidly and jerked the crank out of plaintiff's hands, and the crank or handle struck him on the arm. The evidence in relation to the injury is very slight, a physician testifying, merely, that he examined plaintiff's right

arm some time before the trial, and found evidence of fracture near the wrist, and also higher up between the wrist and elbow. Ramski's account of the matter is as follows:

"We never lowered stone with the handles before, and we never tried to before until this time. The difference between raising a stone and letting it down is, in raising it you are always pulling or shoving steady, and in lowering it, when you get it up this way (indicating with his hands), it gives a jerk. When we raise it, it will always pull on the shaft steady, but when we lower it, it always gives a jerk. It makes no difference while one side is up and the other side is down. When the stone is lowered it gives two jerks every time it turns around once, no matter if there are two men on it; I know it because I worked on it. I did not know it was dangerous to lower it; it was the first one we ever tried to lower with the handles, and the first time that it happened that the handle slipped off; it never slipped off before, and I never saw it slip off with Kerrigan or any one alse; this was the first time it ever happened; it slipped off all of a sudden."

The evidence is that prior to June 6, 1895, no accident had occurred in using the derrick. There is no evidence that there was any change in the condition of the derrick during the eighteen months that plaintiff was in defendant's employ. Ramski testified that he had been in defendant's employ for eleven or twelve months prior to the accident, and that the ends of the shaft on which the handles were placed in using the derrick, were no more worn than they were when he was first employed. Prior to the time of the accident, the heaviest stone moved by the derrick weighed from five to eight tons.

KING & GROSS, attorneys for plaintiff in error.

JOHN A. POST and JOHN B. BRADY, attorneys for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

It is apparent from the evidence that the derrick was reasonably safe for the purpose for which it was used, when

Lehman v. Bagley.

used in the manner in which it had invariably been used before the accident; also, that no order or direction was given to use it in any other than the accustomed way. The order, "Lower down," did not, in the least, imply the lowering in other than the usual manner, namely, by means of a rope around the shaft, the handles being removed. Therefore, when plaintiff and his fellow-servants undertook to lower the stone in an essentially different manner from that before invariably used, well knowing that the accustomed manner had proved to be safe, and being ignorant of the probable consequences of the new experiment, they assumed the risk of the new method which, without direction from any one, they adopted. If there was any negligence, it was that of plaintiff and his fellow-servants in departing from the usual and safe method of using the derrick, or of his fellow-servants in permitting the handle or crank, which they were using to come off the end of the shaft, or these two combined. The legal presumption is, that a servant knows the condition of materials, machinery or appliances which he has a constant opportunity to inspect, and which his regular duties bring under his notice. Shearman & Redf. on Negligence, 4th Ed., Sec. 216.

In the present case the plaintiff's evidence is that he and his fellow-servants had ample opportunity to know the exact condition of the derrick; and there is no evidence that any complaint or suggestion was ever made to defendant that it was at all defective. It is also the law that if a servant knows of precautions, by using which, danger may be avoided, he should use such precautions. Id., Sec. 214. The derrick having invariably been used for a long time in a certain way with safety, and without accident, it is a reasonable, if not unavoidable inference, that the master, the defendant, directed its use in that way, and that an essential departure from that way was disobedience of the master's directions. We are of opinion that there can not be a recovery on the evidence, and that there was no error in directing a verdict for the defendant. The judgment will be affirmed.